UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM EDWARDS,

                Plaintiff,

v.                                                   9:04-CV-1054
                                                      (NAM/GHL)

DONALD SELSKY, Director of S.H.U. and Tier 3
Appeals; JOSEPH McCOY, Superintendent;
THOMAS G. EAGEN, Director of Inmate Grievance
Program for D.O.C.S.; GARY ANTHONY, Deputy
Superintendent of Administration; D.W. SEITZ,
Captain; C.O. C. BONVINO, and RAFTIS,
Recreation Supervisor and Tier 3 Assistant,

                Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

WILLIAM EDWARDS, 3490609108
  Plaintiff, *Pro Se*
Otis Bantum Correctional Center
1600 Hazen Street
East Elmhurst, NY 11370

HON. ANDREW M. CUOMO                     ED J. THOMPSON, ESQ.
Attorney General for State of New York         Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This action has been referred to me for Report and Recommendation by the Honorable

Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.3(c) of the Local Rules of Practice for this Court. Plaintiff commenced this *pro se*

action pursuant to 42 U.S.C. § 1983.  Generally, Plaintiff alleges that, while he was incarcerated at Cayuga Correctional Facility between December of 2001 and February of 2002, seven employees of the New York State Department of Correctional Services ("Defendants") violated his rights under the First, Eighth and Fourteenth Amendments by interfering with his legal mail, failing to process his grievance regarding the alleged interference, and filing a false misbehavior report against him in retaliation for complaining about the alleged interference.  (Dkt. No. 13 [Plf.'s Am. Compl.].)

Currently pending is Defendants' letter to the Court dated February 7, 2006, requesting dismissal of Plaintiff's Amended Complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Local Rule 41.2(b) of the Local Rules of Practice for this Court.  (Dkt. No. 20.)  For the reasons that follow, I recommend that the Court dismiss Plaintiff's Amended Complaint upon Defendants' motion, or in the alternative *sua sponte*, for failure to prosecute this action and/or failure to comply with the Court's Order of December 13, 2004, directing Plaintiff to keep the Clerk's Office apprised of his current address (Dkt. No. 4 at 3).

I.      RELEVANT LEGAL STANDARD

Rule 41 of the Federal Rules of Civil Procedure permits the Court to dismiss a proceeding, upon motion **or *sua sponte***, for failure to prosecute and/or failure to comply with an Order of the Court.  Fed. R. Civ. P. 41(b).[1]  As a result, Rule 41(b) may be fairly characterized as

---

[1]     Fed. R. Civ. P. 41(b) ("For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant."); *Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Rule 41[b], a district court retains the inherent power to dismiss a plaintiff's complaint, *sua sponte*, for failure to prosecute) (citations omitted); *see also* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge shall order it dismissed.").

providing for two independent grounds for dismissal: (1) a failure to prosecute the action, and (2) a failure to comply with the Federal Rules of Civil Procedure or any order of court.

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution.[2] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute under Rule 41(b):

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.[3]

As a general rule, no single one of these five factors is dispositive.[4] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure.[5]

---

[2]   *See Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981).

[3]   *See Shannon v. GE Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

[4]   *See Nita v. Conn. Dep't of Env. Protection*, 16 F.3d 482 (2d Cir. 1994).

[5]   *See, e.g., Robinson v. Middaugh*, 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at *2-3 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed. R. Civ. P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal pursuant to Fed. R. Civ.P. 41(b) for failure to comply with an order of the court is a matter committed to the discretion of the district court."[6] The correctness of a Rule 41(b) dismissal for failure to comply with an order of the court is determined in light of five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.[7]

## II. ANALYSIS

### A. Revocation of Special Status as *Pro Se* Litigant

"[T]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" or status that is normally afforded *pro se* litigants.[8] The rationale for this revocation of special status (at least in the Second Circuit) is not that the *pro se* litigant should be punished but that his

---

ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

[6] *Alvarez v. Simmons Market Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988) [citations omitted].

[7] *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) [citations omitted].

[8] *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

excessive litigiousness demonstrates his *experience*, the lack of which is the reason for conferring the special status upon *pro se* litigants in the first place.[9] Moreover, permitting experienced *pro se* litigants to retain their special status (despite their litigation experience) would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[10]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status look at a variety of factors in assessing whether or not the *pro se* litigant is experienced. Most

---

[9] *See, e.g.*, *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, M.J., adopting Report-Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

[10] *See, e.g., Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); *see also* Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev*. 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro* se litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

often, these factors include (1) the number of previous federal court actions filed, (2) the number of previous federal court appeals filed, (3) the number of previous state court actions filed, (4) the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions and/or appeals.[11] There is, of course, no formula for determining "How many is too many?" However, *generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced."[12] Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer* than a dozen cases.[13] However, there appear to be *more* cases refusing to

---

[11]   *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143; *Gummerson*, 201 F.3d at *2; *Flynn*, 32 F.3d at 31; *Frawley*, 2006 WL 1742738, at *3 & n.2; *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10; *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3; *Dean*, 204 F.R.D. at 257; *Santiago*, 91 F. Supp. 2d at 670; *McGann*, 1999 WL 173596, at *2, 8-10; *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3; *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1.

[12]   *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone).

[13]   *See, e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **ten** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed **eight** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed **seven** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **seven** lawsuits pending in Western District).

revoke the special status of a *pro se* litigant who has filed fewer than a dozen cases.[14] One reason for this array of cases is that, in determining whether or not a *pro se* litigant is "experienced," courts sometimes consider additional factors, such as the quality of the *pro se* litigant's submissions to the Court (e.g., whether they are typed, cogent, supported by applicable affidavits, exhibits, and/or memoranda of law, etc),[15] and whether or not the *pro se* litigant has been victorious (or partially victorious) in any of his previous actions or appeals.[16]

---

[14] *See, e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eleven** other federal lawsuits since 2000); *Pritchett v. Portoundo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eight** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **six** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed **five** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of **five** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

[15] *See, e.g.*, *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.").

[16] *See, e.g., Saudners*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally

Here, Plaintiff has, since September of 2000, filed at least *fifteen* other federal or state court actions,[17] at least *ten* state court appeals,[18] and at least *two* federal court appeals.[19] By his own account, at least *four* of the fifteen other federal or state actions have been resolved in Plaintiff's favor.[20] While it is unclear how much money Plaintiff received from the resolution of these cases, I note that, as of August 30, 2004, Plaintiff had approximately $43,000 in his checking or savings accounts.[21] As a result I find that the circumstances warrant revoking Plaintiff's special status as a *pro se* litigant for the remainder of this action. Again, continuing to afford him such special status would be unnecessary (and unfairly prejudicial to Defendants).

B.   **Dismissal for Failure to Comply with Court Order**

On December 13, 2004, the Court ordered Plaintiff, *inter alia*, to keep the Clerk's Office apprised of his current address. (Dkt. No. 4 at 3.) Specifically, the Court advised Plaintiff that "**[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their**

---

afforded inexperienced *pro se* litigants, fact that "[plaintiff] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

[17]   (Dkt. No. 13 at 4-7 [Plf.'s Verified Am. Compl., describing 15 other federal and state court actions].)

[18]   (Dkt. No. 13 at 7-8 [Plf.'s Verified Am. Compl., describing 10 state court appeals].)

[19]   *See Edwards v. Goord*, 02-CV-3731, Mandates from Second Circuit Dismissing Plaintiff's Interlocutory Appeals (S.D.N.Y. filed March 22, 2004, and Aug. 11, 2004)

[20]   (Dkt. No. 13 at 7-8 [Plf.'s Verified Am. Compl.].) *See also Edwards v. Goord*, 02-CV-3731, Letter to Court from Plaintiff (S.D.N.Y. filed Sept. 15, 2004) (indicating that Plaintiff had received a settlement check from defendants therein).

[21]   (Dkt. Nos. 2, 4.)

**counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action.**" (*Id*.)  Plaintiff's current address of record in this action is "O.B.C.C." on 1600 Hazen Street in East Elmhurst, New York (which is an abbreviation for Otis Bantum Correctional Center, a jail maintained by the New York City Department of Correction on Rikers Island).  However, on February 7, 2007, defense counsel notified the Court that Plaintiff was released from the custody of the New York City Department of Correction on January 18, 2007. (Dkt. No. 20.)  Based on my review of the New York City Department of Correction's online "Inmate Look-Up Service," it does appear that Plaintiff was in fact released from the custody of the New York City Department of Correction at 7:52 a.m. on January 18, 2007, because of the expiration of the sentence that he was serving.[22]  Moreover, it appears, from the aforementioned "Inmate Look-Up Service," that Plaintiff's address of record in this action has not been accurate since *September 12, 2006*–the date on which he was transferred from the Otis Bantum Correction Center to the Eric M. Taylor Center, also on Rikers Island.[23]

Based on the foregoing, I conclude that Plaintiff has violated the Court's Order of December 13, 2004, to keep the Clerk's Office apprised of his current address. (Dkt. No. 4 at 3.)  Having identified how Plaintiff has violated an Order of the Court, it is now necessary to determine whether that failure should result in dismissal, in light of consideration of the five relevant factors identified by the Second Circuit.[24]

---

[22]  *See* New York City Department of Correction's "Inmate Look-Up Service" http://a072-web.nyc.gov/inmatelookup/inmateDetail.do?bookCaseid=3490609108 (last visited Feb. 8, 2007).

[23]  (*Id*.)

[24]  *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) [citations omitted].

With regard to the first factor (the duration of Plaintiff's failure to comply with the Court Order), I find that Plaintiff has failed to comply with the Court's Order for approximately *five months* now–i.e., since the date he was transferred from his last address of record in this action, September 12, 2006.[25]  I note that *pro se* actions have been dismissed for failure to comply with a court order even where the failure was for less than five months.  *See*, *e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (plaintiff had failed to comply with order directing him to answer interrogatories for more than four months).

With regard to the second factor (whether Plaintiff was on notice that failure to comply would result in dismissal), I find that Plaintiff has received such notice.  Specifically, Plaintiff received this notice through Judge Mordue's Order of December 13, 2004, which provided that "**[p]laintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action.**"  (Dkt. No. 4 at 3.)

With regard to the third factor (whether Defendants are likely to be prejudiced by a further delay in the proceedings), I find that this factor weighs in favor of dismissal.  This case has been pending "well past the eighteen months envisioned by Congress when the Civil Justice Reform Act of 1990 was instituted."[26]  Since September 7, 2004 (when Plaintiff filed his original Complaint in this action), it is quite possible that memories of the events in question (which

---

[25]    *See*, *supra*, note 22 of this Report-Recommendation.

[26]    *See Adelman v. Hobbie*, 03-CV-0032, 2006 WL 2639359, at *8 (N.D.N.Y. Sept. 13, 2006) (Sharpe, J., adopting Report-Recommendation by Treece, M.J.) (dismissing *pro se* civil rights action for failure to prosecute under Rule 41[b] in part because "[o]ver three years has passed since this litigation was commenced, well past the eighteen months envisioned by Congress when the Civil Justice Reform Act of 1990 was instituted").

occurred between December of 2001 and February of 2002) have faded, relevant documents have been discarded, and witnesses have been transferred to other correctional facilities. *See Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case [six years], that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

      With regard to the fourth factor (a balancing of the court's interest in managing its docket with Plaintiff's interest in receiving a fair chance to be heard), I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this matter. This is one of the older prisoner civil rights cases to which I have been assigned as magistrate judge. It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). I am fully aware of Plaintiff's right to be heard on the civil rights claims he has presented. However, I am also aware that (1) Plaintiff has already had two years and five months in which to be heard on the civil rights claims he has presented, (2) the Court has (up until now) afforded Plaintiff special solicitude in this action due to his status as a *pro se* litigant,[27] and (3) Plaintiff's considerable litigation experience warrants revoking his special status.[28] Simply stated, I am

---

    [27]    (*See*, *e.g.*, Dkt. No. 7 at 2-3 [Order of 4/11/05 assisting Plaintiff with service of his Complaint]; Dkt. No. 10 [Order of 4/27/05 assisting Plaintiff with filing of his affidavits of service, and providing Plaintiff with copy of docket sheet in the action].)

    [28]    *See*, *supra*, Part II.A. of this Report-Recommendation.

unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendants.

With regard to the last factor (whether the Court has adequately considered a sanction less drastic than dismissal), I have considered all less-drastic sanctions and rejected them.  For example, I am persuaded that issuing an Order chastising Plaintiff for his conduct would be futile, given the fact that such an Order would, in all likelihood, never reach Plaintiff, due to his failure to provide a current address.  I am also persuaded that simply waiting six months or a year for Plaintiff to contact the Court would also be futile, given the fact that he has failed to contact the Court for nearly twenty-one months now.  (Dkt. No. 15 [Plf.'s last submission to the Court, a change of address notice filed on 5/23/05].)

As a result, I recommend that the Court dismiss Plaintiff's Amended Complaint for failing to comply with the Court's Order of December 13, 2004, under Rule 41(b) of the Federal Rules of Civil Procedure.

### C.  Dismissal for Failure to Prosecute

I reach the same conclusion (i.e., that Plaintiff's Amended Complaint should be dismissed) after considering Defendants' alternative argument for dismissal.  This is because the five factors considered by the Second Circuit when reviewing a district court's order to dismiss an action for failure to prosecute under Rule 41(b) are very similar to the five factors considered above in Part III.A. of this Report-Recommendation.

With regard to the first factor (the duration of Plaintiff's failure to prosecute this action), I find that the cumulative period of time that has elapsed due to Plaintiff's failure to prosecute amounts to something in the neighborhood of eight months.  I reach this conclusion based on the

fact that the last deadline (before trial) established by the matter's Pretrial Scheduling Order is the deadline for dispositive motions, which was May 30, 2006 (Dkt. No. 18 at 3).[29] (I note that it was only through a change-of-address notice that Plaintiff provided the Clerk's Office on September 21, 2006, in *another* action that the Clerk's Office obtained reason to update his address in the current action.)[30]

With regard to the second factor (whether Plaintiff was on notice that failure to comply would result in dismissal), I find that Plaintiff has received such notice for the reasons stated above in Part II.B. of this Report-Recommendation.

With regard to the third factor (whether Defendants are likely to be prejudiced by further delay in the proceedings), I find that Defendants are indeed likely to be prejudiced by further delay in these proceedings for the reasons stated above in Part II.B. of this Report-Recommendation.

With regard to the fourth factor (whether the Court has taken care to strike a balance between alleviating court calendar congestion and protecting Plaintiff's right to due process and a fair chance to be heard), I find that the Court has done so for the reasons stated above in Part II.B. of this Report-Recommendation.

Finally, with regard to the last factor (whether the Court has adequately assessed the efficacy of lesser sanctions), I find that the Court has done so for the reasons stated above in Part

---

[29] *Cf.* N.D.N.Y. L.R. 41.2(a) (effectively giving plaintiffs a duty to take some sort of action in the case every four months, lest their inaction be deemed "presumptive evidence of lack of prosecution.").

[30] *See Edwards v. Selsky*, 04-CV-0493(FJS/DRH), Plf.'s Notice of Change of Address (N.D.N.Y. filed Sept. 21, 2006).

II.B. of this Report-Recommendation.

As a result, I recommend dismissal on the alternative ground that Plaintiff has failed to diligently prosecute this action. I note that, as the Second Circuit has held, the authority to invoke dismissal for failure to prosecute is "vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982), cited by *Peters-Turnbull v. Bd. of Educ. of City of New York*, 7 Fed. Appx. 107, 109 (2d Cir. Apr. 5, 2001) (unreported decision, cited not as precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, but only to demonstrate the continued precedential effect of *Lyell Theatre Corp.*).[31] For the reasons discussed above, I find that this authority should be exercised under the circumstances.

**ACCORDINGLY**, for the reasons stated above, it is

**RECOMMENDED** that the Court **DISMISS** Plaintiff's Amended Complaint (Dkt. No. 13) upon Defendants' motion to dismiss (Dkt. No. 20), or in the alternative *sua sponte*, for failure to prosecute and/or failure to comply with an Order of the Court, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and Local Rule 41.2(b) of the Local Rules of Practice for this Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the

---

[31] *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

14

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 12, 2007
   Syracuse, New York

                */s/ George H. Lowe*
                George H. Lowe
               United States Magistrate Judge